Ladies and gentlemen, we have only this case on our call. The amount of time we have allotted for our Good morning, your honors. My name is Gilbert Lenz. I'm here from the office of the State of Colorado Defender on behalf of Brandon Vega. As your honors know, Brandon has raised challenges to his sentence under both the Eighth Amendment and the Illinois Proportion of Penalties Clause, and I don't see any questions this Court has, but I'll focus this morning on the argument under the Illinois Constitution. Your honors, in October 2013, Brandon Vega committed a very serious offense. But that offense should receive a proportionate penalty, one that's based both upon the seriousness of the offense and with the goal of rehabilitating Mr. Vega. The question in this case is whether Brandon falls in the class of criminally incorrigible defendants for whom the sentence of life without possibility of parole should be reserved. This record and precedent from both the Illinois Supreme Court and this Court say no. He didn't get life without possibility of parole. He got 61 years. He got 61 years at 85 percent. That's correct, your honor, which means he will not have a chance of parole until he's 66 years old. So why did you say he got life without possibility of parole? It's a de facto sentence of life without parole. Why? It's out at 60 cents. Why is that de facto life without possibility of parole? Well, there's two reasons, your honor. First is for a prisoner who is sent to prison at the age of 18. All of the most data shows that it's something this court can take judicial notice of. Why would it take judicial notice of that? Because it's accepted scientific data. Doesn't somebody have to testify to it? I mean, we just can't start. Only Judge Posner, that I know of, goes out and gets new facts out of the Internet. Well, this court, this court itself has actually taken this data into consideration in cases like Sanders where it's. One judge has authored both of those decisions, has he not? The Sanders decision and the, I'm blanking on the other case. I'm sorry, your honor, but yeah. There are other lawyers in those two cases that, contrary to every other case decided in this state. Well, it's, it's an issue that's currently before the Supreme Court, whether, whether a sentence that keeps. In fact, it's the same fact on this point, whether a sentence that keeps a defendant in prison until the age of 66 is, constitutes a de facto life sentence. And that's the buffer case where a 16-year-old was sentenced to 52 years at 100 percent. Counsel, was any of this before the trial court? Any of this issue of the various statistics? No, no, it wasn't, your honor. But, but I, I don't, I believe that was the same was true in Sanders where, where this court did take notice of both data and applied them to, to the record. There's a lot of different studies about this issue, are there not? Yes. Some have different numbers than the others. So how do we know what to take notice of here, if we should even take notice of it? Well, I think, I think there's two answers to that, your honor. First is that this court is certainly, certainly authorized to follow its own precedent in citing a specific number. So, for example, again, the Sanders case said 64 years, it accepts a prison term that keeps a defendant in prison until 64 years to be a de facto life sentence, triggering the need to require, to consider the Holman factors. The second point, your honors, and this may be more pertinent under the Olay Constitution here, is that this court does not need to draw a bright line, does not need to define what a de facto life sentence is. Let me ask you, you cite several scientific studies about brain development for 18 to 24-year-olds. Would this sentence still be considered unconstitutional, an unconstitutional sentence, according to your argument, if the defendant were 24 years old instead of 18? I mean, what's the cutoff? Where's the line? Well, the line is in the mid-20s. I believe that the well-accepted brain science research indicates that brain continues to develop through at least the mid-20s. Some studies should say up to 30, but I think the consensus certainly is that it's into the mid-20s. And so under any interpretation of this data, it applies to these considerations applied to an 18-year-old as this court has found in three different cases, House and Harris, which, again, is also before the U.S. Supreme Court. And, of course, this very division recently in People v. Williams found that the Holman factors applied to the Lancer murder. In those cases, didn't the defendant have limited roles in the crime, though, was a little different than the facts of this case, right? Certainly. In Williams, it was an accountable defendant, as was true in House. But that wasn't true in Harris. In Harris, the defendant was the principal shooter, and he committed a homicide in an attempted murder. Brandon was certainly the principal offender in these two non-homicide offenses. Kelsey, who were the non-homicide? Would you say they were serious offenses? Certainly. Yes. So as far as deciding something on the proportion of penalties, it's a serious offense. And restoring the offender to citizenship, are those given equal weight? Well, under normal considerations of, you know, what judges may do in sentencing, what this Court reviews, courts have said that the seriousness of offense is the most important factor in determining whether a sentence is excessive. I believe under — I don't believe the case has specifically said whether under a proportion of penalties clause analysis, one of those factors deserve more weight than the other. And this Court, the proportion of penalties clause, as the Illinois Supreme Court has interpreted, is there to authorize Illinois courts to intervene when they identify a sentence that is disproportionate to defense and clearly does not take the — Wouldn't you say homicide is a pretty serious crime? I mean — Homicide, certainly. And I would also concede that the non-homicide offenses involved here are serious offenses. We rejected the reasoning in Harris on proportional penalties in Thomas. So this Court has rejected that particular case, and it is in front of the Supreme Court. Why should we deviate from Thomas? Thomas did very well raise his opinion. Well, I think there are several other well-raised opinions that support Bramley's position that, you know, first, that the Holman factors apply to an 18-year-old, House, Harris, and Williams, and second, that they should apply where the defendant has been given a sentence of de facto life or, as I said earlier, even if — this Court does not need to define what a de facto life sentence is in order to find a proportion of penalties violation. The fact that he — that Bramley will not be released from prison until 66 under the mandatory minimum, of course, it's 70 or 69 under the actual sentence, that's close enough to what is any reasonable expectation he has for his life that there's — the case law is clear that a defendant is required to have a meaningful opportunity at release if he doesn't meet the Holman standard for incorrigibility, if he's not irretrievably depraved, if he's not permanently incorrigible, if he's not beyond the possibility of rehabilitation. And there's nothing in this record that shows — It's shocking the moral sense of community by shooting this man five times, he still has three bullets in him, and shooting another man for no reason whatsoever. Doesn't that shock the conscience? And then contending, I'll kill your family. This guy isn't exactly a choir boy. I don't think that a defendant has to be a choir boy in order to have the Holman factors considered. Don't you think society needs to be protected from individuals like this? And it certainly will be protected for many years under a proportionate penalty. The question is whether Raymond Vega is the kind of person that under Holman has no hope for rehabilitation, where he can reasonably be classified as someone who should never see the outside world again. And I don't believe that this record — that the legislature enacted these mandatory minimums and the enhancements. I mean, they're very well aware of the fact that a person could be 21 years old and convicted of these crimes, could be 30 years old and convicted of these crimes, and be sentenced to these terms. So you're suggesting that the statute itself, with the mandatory minimum, the answer is unconstitutional? As applies to Raymond Vega, yes. And certainly the legislature — I'm talking about unconstitutional on his face. Because as it would be applied to anyone over 25, if that's your cutoff, it's natural life. That's correct. To anybody. That's correct. Raymond is not raising the facial challenge, however, Your Honor. He's — under the proportionate penalty — Your argument would be a facial challenge to the constitutionality because your argument would apply to everybody. I see what you're saying, Your Honor. I don't believe that's true because what we're saying is that legal principles apply to Brandon Vega. And then you look at the record. And this particular record does not indicate that Brandon is among the class of permanently incorrigible defendants for whom the Holman factors should not have been relevant. And what do you base that on, counsel? What do you base that on? Well, the significant mitigation in this record. I mean, Brandon was only 18 years old. He had no mother in his childhood. He had a father who was addicted to drugs and then who eventually became paralyzed. There's no doubt that Brandon had a very troubled childhood. And despite that, he showed significant rehabilitative potential by displaying how much effort he was willing to put in to care for his paralyzed father and his other family members. Well, he's willing to put in. But what has he done? What was the mitigation in his life that was done by the trial court? There's two aspects. There's the troubled childhood aspect where he was essentially left weatherless by having no supervision. He quit school at 12, became an alcoholic in his early teens. And as his co-defendant acknowledged, was the kind of person who became out of control when he was drunk. And we know he was drinking during this incident. On the other hand, despite this, he showed significant rehabilitative potential with a caring family. And he himself cared for his family, again, his paralyzed father. He had a job at the time of his arrest, during which he was recognized by his supervisors as a very hardworking person. He also, in elocution, expressed remorse. He apologized for doing this. And he acknowledged it. I want to understand this. Every one of these – every defendant who commits acts like this, all he has to do is in elocution say, gee, I'm sorry, and we should reduce his sentences for that? Two responses to that, Your Honor. First, the elocution isn't the only mitigation evidence in this record. But second, I'm not asking – Ben is not asking his court to reduce his sentence. He's asking his court to remain for a sentencing hearing where the judge must expressly consider the Holman factors before sentencing him to essentially a sentence of life without parole. Okay, counsel, thank you. We'll give you some more time. State. Thank you, Your Honor. Good morning, Your Honors. My name is Marcy Jacobs. I represent the people of the State of Illinois. This adult defendant, 61-year sentence, of which he has a possibility of parole after 52 years, is constitutional on three separate bases. I will quickly say what they are and then go into each one in detail. First, because he is an adult. Second, because the Miller-Holman factors were actually considered and found not to reduce his culpability in this case. How were they considered? The sentencing hearing was replete with every bit of information required to consider each factor. That's true. But did the court specifically – I think certainly the PSI had factors listed, his age and so on. But did the court explicitly or in other way indicate that it had considered those factors? So the court specifically said it considered everything in the pre-sentence investigation, the defendant's background, family history, alcohol and substance abuse, social history, factors in aggravation and mitigation, facts of the case, rehabilitative potential. He noted it was game-motivated. He heard from two family members of a defendant all about his background and his raising. And very – this is very similar to actually the facts in Holman. At any time did the trial judge indicate that he had considered the defendant's youth and its characteristics in the commission of the crime and thus the sentencing? Well, as this court noted in its original decision in this case, that it's not required to speak all of this on the record. But as I'm stating, that in People v. Holman, the sentencing court said – actually said less than what our sentencing court said here. In that case, the U.S. Supreme Court went on to extract away from the record everything that was put before that judge, that sentencing judge, that showed that everything was within its consideration right there on the record and did not remand for sentencing – for resentencing. And so let me say that in this case, it was on the record that this was – the Holman factors, this was not an impulsive act. So this defendant was lying in wait with a fully loaded Glock that he got from his gang member friends a couple houses down from where the victim lived. And this record is – also doesn't show that he did not appreciate the risks and consequences of the crime because he certainly did. Because he got rid of the gun. He eluded police for up to two months after he was named in this case. It does not show any particular immaturity. He was actually, as counsel noted, he showed a lot of maturity in other aspects of his life, taking care of his paralyzed father, visiting his grandmother, taking care of his cousin's children, responsibly working at a job. And he showed that maturity, but at the same time he decided not to apply that to his violent gang life. And it showed no evidence that he had any peer or familiar pressure to commit this crime. Certainly the crime – he was the sole shooter. It was entirely his act, his choice. There was no evidence on the record that he was incompetent in any way. His problems at school were disciplinary, not academic. He had no indication that he didn't know how to deal with police or prosecutors. He didn't even give a statement in this case. So all of those things were on the record. And just like in People v. Holman, the United States – the Illinois Supreme Court was able to see that and see that when the judge then made his more conclusory statements about what he considered, it was all in there and it was all before him. Counsel, do you agree with your opponent that this is – that the sentence is a de facto life sentence? No, I don't. And I think that he – my opponent admitted in his brief that there is no definitive report on life expectancy in Illinois or in the United States at this time. There was no such evidence presented before the sentencing court. And our courts not only are split over, as you all noted, not only are split over whether or not this is the appropriate forum to make those determinations, some of the courts – People v. Jackson, for instance, and that was in the Fifth Division in 2016, noted a CDC table that had a 74-year life expectancy. So they're all over the place right now. Your opponent points out the United States Sentencing Commission equates a term of 39 years to a life sentence for someone of this age because the life expectancy for incarcerated persons is less than 60 years? Well, but again, that's not definitive in any way. And a division of this court pointed out a CDC table that says something very different. So this is – we would argue this would not be a forum to determine that because that needs to be determined. And, of course, as this court is well aware, People v. Buffer is on – is being considered by the Illinois Supreme Court and is expected very shortly. The decision on that case is my understanding. Harris is the Court of the Supreme Court. And Harris is also – my understanding is Harris is going to be coming down as early as next week. So while I would – That would be good for all of us. So I would argue that in addition to the fact that, based on all that law before us, that this sentence is constitutional on three different grounds, that if this court didn't go ahead and just find that, that it should wait in advance for the Supreme Court to make its decision in those two cases. So basically, even though you have those outliers that you talked about, Williams and – this division's case in Williams, and you've already talked about the very, very distinguishing facts about the accountability and that there were some other of the polling factors present in those cases that are certainly not present here. But even so, what it all boils down to is the only remedy that he's asking for and that anyone in any of these cases has asked for is that it be sent back for consideration of the Miller-Holman factors, which was done here. There's nothing more to be considered. It was all out there on the record for consideration. And not only did the sentencing judge, you know, was able to not reduce his – not believe that anything in those factors would reduce his culpability in this case. The sentencing judge explicitly stated that this was not a bare minimum case, and he gave him four years over the minimum based on the seriousness of the offense, which, as this Court noted in its original decision in this case, of course is the most important factor, and mitigation need not be given more credence than that. So – Counsel, is there any case that says exactly that the Court has to say the words No. Like I said in your original decision, you pointed out People v. Davis, which indicates to everyone in Illinois that you do not need to – the judge does not need to explicitly lay out his reasoning on the record. And in addition to People v. Holman, which I would urge you to take a look at to show how similar the sentencing court's pronouncements were there and that how they were able to extrapolate from the record to determine that they didn't need to send it back, there are other appellate court cases that were very similar too. Rodriguez was one, People v. Rodriguez. Again, very similar pronouncement by the sentencing court, and they were able to see what was on the record and to not have to send it back for resentencing because it was all there. So this judge is not – the sentencing judge was not particularly outlined in what he did state on the record. It was very consistent with what most other courts say on the record and based on that record. And it was a full sentencing hearing. I mean, we heard from two of defendants' relatives in depth about him and his character. The trial court who did hear and see everything, even after hearing all of that mitigation, said this is not a bare minimum case. This lying in wait with a fully loaded gang gun to shoot your victim and then deciding, well, you know, I'll shoot his 60-year-old uncle while he's sleeping in his bed there is not really a minimum type of crime. And the defendant did raise the issue. He keeps saying it's a non-homicide crime, it's a temp murder. But one division of this court also noted that they're not so sure that a temp murder is a non-homicide crime. That was in Peeper v. Gibson. So based on what we've talked about, any way you look at a defendant's sentence is constitutional. He is an adult under the Illinois Supreme Court. There is no case defendant has presented, no case there is no case that says this is an Eighth Amendment violation, not in this division, not in Illinois, not in any jurisdiction. When we talk about proportionate penalties, this defendant was an adult. And, I mean, not only is he, as an adult, he can constitutionally be sentenced to a mandated actual life sentence, let alone a lengthy term of years, which our legislature has deemed appropriate in cases like this. So we are asking that based on the three reasons that this is constitutional, he's an adult, the factors were considered anyway, and that this 52, a sentence in the low 50s, is not considered a de facto life sentence. We would ask this Court to affirm this adult defendant's entirely constitutional discretionary sentence, or at the very least, hold the decision in abeyance until Buffer and Harris is resolved. Thank you very much. Thank you.  Yes, I have three points, Your Honors. Counsel, before you, you know, your opponent points out, correcting it, no other case has found a sentence imposed on an adult to be an Eighth Amendment violation. Why are we, why are you asking us to expand into that territory, and is this the case to do that? Well, I think it is, Your Honor, because while no case, I think the combination of. Well, there are two questions, so answer the first part first. Sure. I mean, you're asking us to expand into an area that no other court, as your opponent correctly points out, there is no other case that says that a sentence of this type imposed on an adult is an Eighth Amendment violation. An Eighth Amendment violation, that's correct, Your Honor. But I think, I think, I think that it applies, the Eighth Amendment applies under, that it certainly applies to someone who hasn't reached his 18th birthday, and we're arguing that it should apply to someone who's nine months past his 18th birthday under the reasoning, the proportional penalties reasoning, the Illinois constitutional reasoning of Williams, House, and Harris. There's, we're arguing first that the Eighth Amendment should be extended to that situation in this particular case. But again, this Court does not need to reach the Eighth Amendment issue. It can find that Brandon's sentence is invalid under the Illinois Constitution, which is more protective than the Eighth Amendment. And along those lines, this Court does not need to, again, does not need to say that this is a de facto life sentence. It's close enough to prevent Brandon from getting the meaningful opportunity at release after establishing maturity and mere irritation that's required by cases like Patterson, Buffer, and Sanders. In Buffer, how old was he in Buffer when he committed the crime? Sixteen, I believe, Your Honor. How old was Mr. Vega when he committed the crime? Eighteen and nine months. So he wasn't a juvenile when he committed the crime. How does Buffer apply? Buffer applies on the question of whether someone who does not have a chance of parole until he's 66 years old is serving a sentence that's long enough to trail him. Does he apply to an individual who committed this crime as a juvenile, not as a person who committed this crime as an adult? There's no question, Your Honor, that in order to grant Brandon relief, there's two lines of cases from this Court that overlap here, the law that applies to juveniles as well as the cases that apply the proportional penalties clause to 18-year-olds or even 19-year-olds. Those two principles combined are why Brandon should be granted relief in this case. And finally, Your Honors, we also encourage the Court to look at Holman because in Holman the judge considered the factors more thoroughly than the judge here. This Court has said multiple times that merely stating that the evidence was considered is not enough. The Holman factors must actually be considered expressly. It's not under a magic formula where certain words have to be stated, but they have to be expressly considered. And also, what I'm looking at here is the fact that he had considered everything contained in the pre-sentencing investigation report. And all of those factors are in the report. So is the judge required to do something else? I believe so, Your Honor, under Holman. And what's that something else? Well, it doesn't require that a certain word be said, but it does require that Holman provides a list of factors that need to be considered before the defendant will be given a sentence of life without parole. And those factors need to be expressly considered in some way. Again, there's no magic words, but they need to be considered. And in Holman, again, the judge didn't use magic words. Here's what I'm trying to figure out. How do we know that the judge didn't? If we accept what you're saying, if I accept your argument, how do we know the judge didn't consider that? Your opponent points to how we know that the judge did consider it. I want you to tell me how do we know that he didn't? Well, first, because they were expressly considered. And I think what we're looking at here is the case law. No, you're arguing they weren't expressly considered, so we're kind of going round and round. I want to know, you know, what is it that we should look at to know that the court didn't expressly consider them? Your opponent gave us a reasonable argument of what she thought we should look at to determine that the court did consider them. I want to know what is your opposing view to that. Well, if this court agrees that a prison term that keeps a defendant in prison without parole until at least age 66 is the functional equivalent of life without parole, then that sentence cannot be imposed without considering the Holman factors. And I think along with the fact that the judge didn't expressly consider them goes the fact that he imposed that particular sentence, a sentence that was required to impose under the statutory framework. So this court doesn't even need to look at exactly what the judge said. We're looking at the mandatory minimum here first. The mandatory minimum itself is what would keep Brandon in prison until age 66. And that alone, without even looking at what the judge said, is a sentence that triggers the necessity for the Holman factors. And my last point, Your Honor, is to look at Holman, I mean certainly setting aside what the judge said at Holman versus what the judge said here, looking at the defendants in each case, I mean the Holman defendant was a murderer, a serial killer, Brandon Vega, and then they said this particular punishment was reserved for people who have no hope of rehabilitation. As serious as this offense was, this record plainly reveals that Brandon is not the kind of person who is primarily incorrigible. It's more indicative of someone who has a very tremendous age, who did a very impetuous, immature thing. He's not beyond rehabilitation, and he should be sentenced. Attempting to kill two people cannot be categorized as impetuous. Every case that is applied, that factor that I know was applied to a homicide case, Your Honor. So I believe those are the terms the court is using. From the standpoint of the defendant, how is attempt murder any different than murder? The only difference is the guy didn't die. It's a factor before this court, and as the U.S. Supreme Court said in Graham, the U.S. Supreme Court bars someone from getting mandatory life without parole, or discretionary life without parole, for non-homicide offenses. So it's a factor before this court. It's one of many factors. But look at the facts of it. He took a gun. He followed the guy up the stairs. Bang, bang, bang. Shot him. Shot his uncle. Would that describe as impetuous? The case is really fine. You're under active immaturity. The reason it's reflective of immaturity is because the well-established science shows that someone who is 18 years old, sorry, 18 years old, and setting aside the fact that he's a very troubled 18-year-old, someone who's 18 years old is more likely to do something like this than someone just two decades older. That's immaturity. Whether it's impetuosity or some other word, it's immaturity. Thank you. Thank you. Counsel? The matter has been taken under a final court order.